IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**SCHONE DEES,**

 **Plaintiff,**

v.                Case No. 4:10cv305/MCR/WCS

**STATE OF FLORIDA, DEPARTMENT
OF JUVENILE JUSTICE,**

 **Defendant.**
_____/

## ORDER

  The plaintiff, Schone Dees, filed this lawsuit against the State of Florida, Department of Juvenile Justice ("DJJ"), asserting claims for age, race, and disability discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e-2(a)(1), *et seq.*, and the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. § 760.01, *et seq.* Pending before the court is DJJ's motion for summary judgment (doc. 27), which the plaintiff opposes.[1] Having considered the motion and response, the court finds there is no genuine issue of material fact and DJJ is entitled to summary judgment as a matter of law.

---

  [1] In response to DJJ's motion, the plaintiff indicated that she intends to pursue only her race discrimination and retaliation claims. The court thus considers her remaining claims abandoned. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (holding that "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned"); *see also Dehaan v. Pfizer, Inc.*, No. 4:09cv35, 2011 WL 672246, at *1 (M.D. Ga. Feb. 16, 2011).

Case No. 4:10cv305/MCR/WCS

## BACKGROUND[2]

The plaintiff is a forty-two year old black female. In July 2009, she applied for two positions as a juvenile detention officer at the Okaloosa Regional Juvenile Detention Center ("ORJDC") in Crestview, Florida.[3] Although the plaintiff interviewed for the positions, she was not hired.[4] Having previously applied numerous times with DJJ and never been offered a position, the plaintiff contacted DJJ to find out why she was not hired. When the plaintiff called, she spoke with Elsie Beck, whom she identifies as a white

---

[2] For the limited purposes of this summary judgment proceeding, the court views "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party," which in this case is the plaintiff. *Martin v. Brevard Cnty Pub. Sch.*, 543 F.3d 1261, 1265 (11th Cir. 2008) (internal marks omitted). The court is mindful, however, that "what is considered to be the 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial . . . ." *Cottrell v. Caldwell*, 85 F.3d 1480, 1486 (11th Cir. 1996).

[3] The plaintiff asserts in her amended complaint that she applied for the positions in August 2008. In response to DJJ's motion, however, she states that she applied for the positions in July 2009 and that the discrepancy is due to a clerical error.

[4] According to Robert Smith, the superintendent of the Crestview facility, two Juvenile Detention Officer I positions were available in June/July 2009. The only qualifications for the positions were that the applicant be over the age of 18, have no criminal record, and possess a Florida driver's license. Pursuant to DJJ's procedure, once the application deadline passed, the applications were reviewed for completeness and to determine whether the applicants were qualified for the positions, willing to work all shifts, had a criminal record, sought pay above that allowed for the positions, or lived too far from the facility to be considered eligible. From the pool of eligible applicants, Smith selected fourteen to be interviewed. In order to "promote a system of checks and balances" and ensure fairness in the selection process, Smith did not interview the applicants himself; instead, he assigned two supervisors, Captain Victoria Lenintine and Lt. J.G. Roten, to conduct the interviews. During the interviews, the applicants were each asked the same six questions previously approved by DJJ. Lenintine and Roten recorded the applicants' responses on a form and rated them on a scale of one to seven, with seven being the highest. The scores were based on the quality of the responses given, the applicant's ability to think on his or her feet, and the manner in which the applicant responded to the questions – *i.e.*, the applicant's demeanor.

After all the applicants were interviewed, the scores were tallied and summarized on the interview roster and the materials were provided to Smith so that he could review them and make a final decision. The four highest ranking applicants were Tony Bailey, Joshua Peters, Tabitha McLeod, and the plaintiff, who received scores of 46, 41, 31, and 30, respectively. Smith hired the two highest ranking applicants, both of whom are white males. Smith testified by affidavit that, in addition to the fact that the plaintiff rank fourth on her interview, he was concerned about the plaintiff's employment history, which included a four-month tenure as a correctional officer with the Florida Department of Corrections, from which the plaintiff resigned, followed by eleven months of unemployment, three months working at Wal-Mart, another four months of unemployment, a part-time job at another Wal-Mart for five months, and then four months of unemployment immediately preceding her application. In Smith's experience, such a "spotty work history" can indicate a lack of quality and/or reliability.

secretarial aide at ORJDC. According to the plaintiff, Beck informed her that the positions for which she applied were cancelled and thus were never filled. Doubting Beck's explanation, the plaintiff contacted DJJ's headquarters to make further inquiry into DJJ's failure to hire her. The plaintiff was told that her complaint would be forwarded to the human resources department and that David Peoples, a human resources representative, would get back to her. After Peoples failed to promptly return her call, the plaintiff contacted Margo Rogers, the head of DJJ's human resources department. Rogers informed the plaintiff that she would have Peoples investigate her claim and determine who was hired for the positions for which she applied. Shortly after her conversation with Rogers, Peoples contacted the plaintiff. The plaintiff claims that Peoples informed her that DJJ sometimes gives preference to people with military backgrounds, suggesting that fact as a reason the plaintiff was not hired, and then offered her a job at the Escambia Regional Juvenile Detention Center ("ERJDC").[5] The plaintiff requested to be placed at ORJDC, rather than ERJDC, but was told that no position was available.[6] The plaintiff thus accepted the position at ERJDC and began her employment with DJJ on September 18, 2009.

The plaintiff claims to have been apprehensive about going to work at ERJDC because she feared that the other employees were aware she had been rejected by ORJDC. According to Napier, ERJDC's superintendent, however, he was not aware of the circumstances under which the plaintiff was hired and, to the best of his knowledge, no one at ERJDC was aware of the reasons the plaintiff was placed at ERJDC unless the plaintiff conveyed such information to them. In any event, the plaintiff claims that she was immediately singled out by her supervisors and treated differently than other employees for a number of reasons, including her race and in retaliation for having questioned DJJ's

---

[5] According to Paul Napier, the Superintendent of ERJDC, there was an opening in late August 2009 for a Juvenile Detention Officer I position. Peoples contacted him and said that he wanted to hire the plaintiff for the position. Because the plaintiff was qualified for the position, Napier agreed to the placement, which allowed him to avoid expending time, effort, and resources on the application/interview process.

[6] The plaintiff wanted to work at ORJDC because she had relatives in the area who could care for her child in the event of illness.

Case No. 4:10cv305/MCR/WCS

failure to hire her.[7]  The plaintiff ultimately was terminated on March 5, 2010, upon Jordan's recommendation, after having worked only four months.[8]

The day she received her termination letter, the plaintiff completed an intake questionnaire at the Mobile office of the Equal Employment Opportunity Commission ("EEOC").[9]  In response to a question regarding the alleged discriminatory action, the plaintiff stated that, in August 2009, she "applied for a job in Okaloosa and they denied my [sic] a position and later called me for Escambia after I complained."  The plaintiff also indicated that, on December 31, 2009, she "applied for a position and was denied an interview.  They told me they weren't hiring and hired two people."  When asked why she believed the alleged acts were discriminatory, the plaintiff replied "[b]ecause I had asked repeatedly to transfer and they stated they didn't have any positions."  When asked the reasons given for the alleged acts, the plaintiff responded "[t]hey stated they were not hiring, and they hired two people."  The plaintiff was asked several questions eliciting information about the manner in which other similarly situated employees were treated and she failed to respond.  Moreover, despite the fact that she checked a box indicating that she had been discriminated or retaliated against based on an alleged disability, the plaintiff failed to respond to any questions regarding her disability claim.  Finally, the plaintiff checked a box on the form indicating that she wanted to speak to an EEOC representative before deciding whether to file a charge and that she understood that, by checking that box, she had not filed a charge of discrimination and would lose her rights in the event she failed to timely file a charge.  The plaintiff did not check the box indicating that she wanted to file a charge of discrimination and authorizing the EEOC to investigate her claims.

---

[7] Although the plaintiff alleges differential treatment, the bulk of her complaint addresses alleged instances of harassment, a claim which she has not asserted in this lawsuit.  The court also would note that one of the plaintiff's two supervisors, Ada Jordan, is a black female.

[8] Jordan recommended the plaintiff's termination because of the plaintiff's poor attitude, tardiness, willful failure to follow DJJ's procedures and her supervisor's instructions, and failure to follow worker's compensation reporting requirements.

[9] The termination letter was hand-delivered to the plaintiff's home in Brewton, Alabama, while the plaintiff was at the EEOC's office in Mobile.

On March 17, 2010, the EEOC forwarded DJJ a Notice of Charge of Discrimination, which referenced claims under Title VII, the Age Discrimination in Employment Act, and the Americans with Disabilities Act. The EEOC did not forward a charge of discrimination filed by the plaintiff, as was its usual practice, and instead indicated that DJJ did not need to take any action at that time. The EEOC also sent the plaintiff a letter enclosing a charge form and requesting that it be signed and returned and advising, in all capital letters, that if it did not receive a signed charge of discrimination or otherwise hear from the plaintiff within thirty days, it would assume she had decided not to file a charge of discrimination against DJJ.[10] On March 31, 2010, the EEOC sent the plaintiff a Dismissal and Notice of Rights to sue, indicating that it was unable to conclude that she had been discriminated or retaliated against and that she had ninety days in which to file suit. This lawsuit ensued.

**DISCUSSION**

A.   Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56(a) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party. *Id.* Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence

---

[10] That letter was not dated.

could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995). As stated, when assessing the sufficiency of the evidence, the court must view all the evidence, and all factual inferences reasonably drawn therefrom, in the light most favorable to the nonmoving party. *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993). Whenever the nonmoving party has presented "sufficient, competent evidence . . . to support [her] version of the disputed facts," the court will resolve disputes in her favor. *Pace v. Capobianco*, 283 F.3d 1275, 1276 (11th Cir. 2002). A mere scintilla of evidence in support of the nonmoving party's position, however, will not suffice to demonstrate a genuine issue of material fact and thereby preclude summary judgment. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

B.  Exhaustion of Administrative Remedies

In order to maintain a Title VII claim, a plaintiff must first exhaust her administrative remedies by timely filing a charge of discrimination with the EEOC.[11] *See Rizo v. Alabama Dept. of Human Resources*, 228 Fed. Appx. 832, 835 (11th Cir. 2007);[12] *Maynard v. Pneumatic Products Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001). Ordinarily, the charge must be filed within 180 days after the alleged unlawful employment practice. *Id.*; *see* 42 U.S.C. § 2000e-5(e)(1).[13] "The purpose of th[e] exhaustion requirement is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Gregory v. Ga. Dep't of Human Resources*, 355 F.3d 1277, 1279 (11th Cir. 2004) (internal marks omitted). "Failure to file a timely charge with the EEOC results in a bar of

---

[11] The FCRA is patterned after Title VII; thus, Title VII case law is applicable to claims brought under the FCRA and the court need not analyze the claims separately. *See Smith v. Naples Commun. Hosp., Inc.*, 433 Fed. Appx. 797, 799 (11th Cir. 2011).

[12] While unpublished opinions are not considered binding, they may be considered as persuasive authority. *See* 11th Cir. R. 36-2; *see also United States v. Futrell*, 209 F.3d 1286, 1289 (11th Cir. 2000).

[13] The period for filing a charge with the EEOC may be extended to 300 days in deferral states, such as Florida, if the plaintiff first files a timely charge of discrimination with a state or local agency. *Id.* There is no indication in this case, however, that the plaintiff filed a charge with the state agency, the Florida Commission on Human Relations.

Case No. 4:10cv305/MCR/WCS

the claims contained in the untimely charge." *Rizo*, 228 Fed. Appx. at 835.

Not only must a plaintiff timely file a charge of discrimination in order to maintain a Title VII claim, but the charge must satisfy certain requirements. "Under Title VII . . . , [the] charge must be 'in writing under oath or affirmation' and 'contain such information and be in such form as the [EEOC] requires.'" *Id.* at 836 (quoting 42 U.S.C. § 2000e-5(b); 42 U.S.C. § 12117(a)). "The EEOC requires that a charge be 'in writing and signed and ... verified.'" *Id.* (quoting 29 C.F.R. § 1601.9). A charge is verified when it is "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgments, or supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. § 1601.3(a). "The verification requirement is mandatory."[14] *Rizo*, 228 Fed. Appx. at 836.

It is undisputed that the plaintiff submitted an intake questionnaire to the EEOC but never filed a charge of discrimination. The plaintiff, however, urges the court to construe the intake questionnaire as a charge, insisting that it satisfies all of the requirements for a valid charge of discrimination. As the plaintiff points out, in certain circumstances, the Eleventh Circuit has "deemed the EEOC's intake questionnaire to be tantamount to a charge for the purposes of timely filing." *Id.* In such cases, the court has "considered a number of factors, including what the questionnaire forms says and how the EEOC responded to it." *Id.* "At a minimum, however, an intake questionnaire must meet the requirements for a validly filed charge in order to be considered a charge for timeliness purposes." *Id.* In this case, the intake questionnaire was not verified. The absence of a verification renders the intake questionnaire insufficient as a matter of law to constitute a valid charge of discrimination. Moreover, it is clear from intake questionnaire that the

---

[14] According to 29 C.F.R. § 1601.12(b), "[a] charge may be amended to cure technical defects or omissions, including failure to verify the charge" and any such an amendment "will relate back to the date the charge was first received." Once a charge has been dismissed, however, it can no longer be amended. *See, e.g., Butler v. Greif, Inc.*, 325 Fed. Appx. 748, 749 (11th Cir. 2009) ("In certain situations, the EEOC regulations permit an otherwise timely charge to be verified or amended after the time for filing has expired, but the deadline to verify is the time the employer is obliged to respond to the EEOC charge. Where a right to sue letter has issued, the plaintiff has brought suit, and the EEOC had closed its file, there is no longer a charge pending before the EEOC that is capable of being verified.") (internal citations omitted).

plaintiff did not intend to file a charge of discrimination at that time or to set in motion the EEOC's investigatory or conciliatory mechanisms. Indeed, the plaintiff indicated that she wanted only to speak to an EEOC representative about the possibility of filing a charge and she failed to mark the box indicating that she wanted to file a charge of discrimination and authorizing the EEOC to investigate her claims. The court thus finds that the plaintiff failed to exhaust her administrative remedies. *See Francois v. Miami Dade Cnty., Port of Miami*, 432 Fed. Appx. 819, 822 (11th Cir. 2011) (noting that "as a general matter an intake questionnaire is *not* intended to function as a charge" and that, even if there are circumstances in which a questionnaire can be considered as having satisfied the requirements of a charge, such circumstances are not present where the questionnaire was not verified, the language in questionnaire did not indicate it would be considered a charge, and the facts suggest that the plaintiff did not intend for the questionnaire to function as a charge); *see also Federal Exp. Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) (rejecting the position that a charge need contain only an allegation of discrimination and the employer's name and holding that, in order for a filing to be deemed a charge, "it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee"); *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1320 (11th Cir. 2001) ("To determine whether the intake questionnaire in this case can function as a charge, we must ask the following question: Would the circumstances of this case convince a reasonable person that [the plaintiff] manifested her intent to activate the machinery of Title VII by lodging her intake questionnaire with the EEOC?"); *Pijnenburg v. West Ga. Health System, Inc.*, 255 F.3d 1304, 1306-07 (11th Cir. 2001) (holding that "an intake questionnaire does not constitute a valid charge under Title VII for purposes of the statute of limitations" where the questionnaire does not contain the requested information or otherwise satisfy the requirements for a validly filed charge).[15]

---

[15] The fact that the intake questionnaire cannot be construed as reflecting the plaintiff's intent to file a charge in this case is underscored by the fact that the EEOC did not investigate the plaintiff's allegations based on the intake questionnaire or engage in conciliation efforts.

Case No. 4:10cv305/MCR/WCS

Having determined that the plaintiff failed to timely exhaust her administrative remedies, the court must now consider whether the plaintiff nevertheless should be allowed to proceed on her claims. The plaintiff argues that, in the event the court finds that she failed to submit a valid charge of discrimination, the court should dispense with the verification requirement under the theory of equitable modification or waiver, as recognized by the Eleventh Circuit in *Butler v. Grief*, 325 Fed. Appx. 748 (11th Cir. 2009), and find that the EEOC's issuance of the right to sue letter cured any deficiency in her charge. Contrary to the plaintiff's assertions, *Butler* does not support a finding of equitable modification or waiver in this case. In *Butler*, the Eleventh Circuit recognized that "[a]t least one Circuit, the Third Circuit in *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256 (3d Cir.2006), has held that the verification requirement should be subject to waiver 'when equity so requires,' such as when, as in that case, the employer responded to the EEOC charge on the merits, declined to challenge the sufficiency of the charge before the EEOC, and later attempted to move to dismiss the suit for lack of verification." *Butler*, 325 Fed. Appx. at 749 (quoting *Buck*, 452 F.3d at 362-65). The Eleventh Circuit did not find that the verification requirement had been waived in *Butler*, instead holding that the "plaintiff's failure to cooperate with the EEOC disentitle[d her] to equitable relief," or even that the verification requirement can be waived under any circumstances. *Id.* at 750. Even if the Eleventh Circuit had held that the verification requirement can be waived, the plaintiff has not alleged any acts by DJJ that reasonably could be construed as a waiver.[16] And the Eleventh

---

[16] Although the Third Circuit found a waiver of the verification requirement in *Buck*, it recognized that litigants typically are precluded from maintaining Title VII actions when their charges are not verified prior to the issuance of a right to sue letter and limited its holding to the facts of that case – specifically, the fact that the employer responded to the EEOC charge without addressing the lack of verification and then moved to dismiss the plaintiff's claims because her charge was not verified. *Buck*, 452 F.2d at 261. The court also made it clear that "the cases in which this rule applies [will] be few and far between" because, "generally speaking, the EEOC looks out for the employer's interest by refusing to call for any response to an otherwise sufficient complaint until the verification has been supplied." *Id.* at 265 (internal marks omitted). Moreover, the facts in *Buck* clearly are distinguishable from the facts in this case. As the Third Circuit explained,

> instead of raising [the plaintiff's] failure to verify her charge as a defense before the EEOC, the [defendant] responded to her claims on the merits. It waited until the right to sue letter had issued, and [the plaintiff's] right to amend her charge had been cut off, to raise her failure to verify as a bar to

Circuit has repeatedly held that a plaintiff's failure to verify her charge is fatal to her claims even if the EEOC issued a right to sue letter. *See, e.g., Vason v. City of Montgomery, Ala.*, 240 F.3d 905, 907 (11th Cir. 2001) (finding the verification requirement mandatory and rejecting the plaintiff's argument that the EEOC should have informed her that there was a problem with her charge and thus effectively waived the verification requirement when it processed her charge and issued a right to sue letter); *see also Davis v. Valley Hospitality Servs., LLC*, 214 Fed. Appx. 877, 879 (11th Cir. 2006) (affirming district court's grant of defendant's motion to dismiss class-wide discrimination claims because counsel's letter to EEOC was not verified and thus did not constitute a valid charge); *Fry v. Muscogee Cnty. Sch. Dist.*, 150 Fed. Appx. 980, 982 (11th Cir. 2005) (noting that the Eleventh Circuit has "rejected the argument that the EEOC is obligated to inform a plaintiff of deficiencies in her charge"). The plaintiff's argument for equitable modification thus also is unavailing.[17]  *See Dates v. Phelps Dodge Magnet Wire Co.*, 604 F. Supp. 22, 27 (N.D.

---

> further proceedings. Were we to rigidly apply the verification requirement to bar [the plaintiff] under these circumstances, we would deprive her of her right to sue without any assurance that the purpose for the verification requirement is met, *i.e.,* that her claim is frivolous. In a case where the employer had the opportunity to point out the plaintiff's failure to verify the charge, and thus challenge its sufficiency, at the EEOC investigation stage, but declined to do so, such a result is inequitable at best. At worst, it gives employers an incentive *not* to raise a plaintiff's failure to verify her charge before the EEOC, in the hope that plaintiff will not discover the "technical" error until it is too late, and that the employer will be able to secure dismissal of any subsequent federal suit on that basis. It neither furthers the verification requirement's purpose of protecting employers from having to respond to frivolous claims nor comports with the Supreme Court's Title VII guidance.

*Id.* at 264.

[17] The court would note that dispensing with the verification requirement under the facts of this case based on the doctrine of equitable modification would defeat the purpose of the exhaustion requirement, which is to allow the EEOC "the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Burnett v. City of Jacksonville, Fla.*, 376 Fed. Appx. 905, 906 (11th Cir. 2010). Indeed, because a charge was never filed, the EEOC never investigated or attempted to conciliate the plaintiff's claims and DJJ was never afforded an opportunity to respond. Moreover, the court is not aware of – and the plaintiff has not cited – a single instance in which the Eleventh Circuit has allowed a plaintiff to proceed with a Title VII claim despite the fact that she failed to file a valid charge of discrimination.

Case No. 4:10cv305/MCR/WCS

Ind. 1984) (finding that where the plaintiff "is at fault for depriving the EEOC of its opportunity to investigate and conciliate her charge, the plaintiff cannot invoke the court's jurisdiction solely on the basis of the fact that she has received notice of her right to sue"); *Williams v. City of Belvedere*, 84 Cal. Rptr. 2d 658, 664 (Cal. Ct. App. 1999) (noting "rule, long applied in California, that the timely filing of an administrative claim is a prerequisite to filing a civil suit" and rejecting the argument that the plaintiff's failure to timely file an administrative claim was excused by the issuance of a right to sue letter).

**CONCLUSION**

Accordingly, DJJ's motion for summary judgment (doc. 27) is **GRANTED**. The Clerk of Court is directed to enter summary final judgment in favor of the defendant, consistent with this order, and tax costs against the plaintiff.

**DONE AND ORDERED** this 28th day of February, 2012.

s/ *M. Casey Rodgers*
**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**